IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANCY MCMANUS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: CCB-18-1672 |
| TARGET CORPORATION, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Target Corporation ("Target"), pursuant to Local Rule 105, submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment and states:

### INTRODUCTION

Target is entitled to summary judgment in this negligence action for two reasons. *First,* although Plaintiff Nancy McManus alleges that she tripped over an uneven seam of concrete on the sidewalk of a Target, nothing in the record substantiates this claim. Plaintiff, herself, could not recall what caused her to trip. Moreover, video surveillance of the incident provides no visual evidence as to what object, if any, caught Plaintiff's toe on the sidewalk. Finally, although the report of Plaintiff's expert civil engineer purports to identify multiple trip hazards on the sidewalk, he does not (and cannot) identify which, if any, caused Plaintiff to fall. Because Plaintiff's causation theory lacks a modicum of evidentiary support, Target is entitled to summary judgment.

*Second*, as a matter of law, the claimed defect in this case—an uneven surface on a concrete sidewalk—was open and obvious for which Target owed no duty to warn. The Court has repeatedly granted summary judgment in favor of defendant property owners in negligence claims arising from uneven walking surfaces under the principle that such conditions are apparent and recognizable to reasonable pedestrians. It is undisputed that Plaintiff's view of the sidewalk was unobstructed, as she fell on a sunny summer afternoon. It is further undisputed that the uneven concrete was noticeable from a standing position. As such, the condition of the sidewalk was open and obvious as a matter of law, thereby entitling Target to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

On August 15, 2016, Plaintiff tripped and fell while walking towards the entrance of the Target store located at 7951 Nolpark Court, Glen Burnie, Maryland (the "Store"). (Ex. 1 (Pl.'s Compl.) ¶ 3.) Plaintiff alleges that she "tripped over an uneven seam of concrete sidewalk." (*Id.*)

Plaintiff testified that her "memory is not good on what caused me to fall," and that at the time of the fall, she did not know what caused her to trip. (Ex. __ (N. McManus Dep., dated Oct. 2, 2018) at 42:14-17, 43:15-17.) Although, after she fell, Plaintiff observed uneven cement, (*id.* at 43:18-44:1), she did not know whether she tripped on that part of the sidewalk:

> Q.   Okay, but when you said I saw the pavement, the sidewalk was uneven, do you know what portion you were looking at that was uneven?
>
> A.   No.
>
> Q.   All right.
>
> A.   No.

> Q.  Now, having made that observation afterwards, is it fair to say, though, that sitting here today or even at the time, although you noted that the sidewalk was uneven, you don't know if that's what caused you to fall?
>
> A.  No.
>
> Q.  So you may have just fallen on the flat surface, not on anything that you saw that was uneven, but you may not have tripped over any uneven part or a seem, you may have just tripped –
>
> A.  I don't remember.
>
> Q.  Okay. That's –
>
> A.  I don't remember

(*Id.* at 45:21-46:18.)

Immediately after the fall, Plaintiff was tended to on the ground by Target employees and customers. (Ex. 3 (Davies Dep., dated Oct. 23, 2018) at 9:5-10:15.) During that time, Plaintiff told a Target employee who responded to the fall, Andrew Davies, that "she just slipped." (Ex. 4 (Davies Team Member Witness Statement); Ex. 3 (A. Davies Dep.) at 17:2-17 (testifying about Plaintiff's statements after she fell).)

Overhead surveillance footage from the Store captured the incident. (Ex. 5 (Video of Incident, submitted in digital format[1]).) The video shows Plaintiff walking towards the entrance through the crosswalk in the street directly in front of the Store. Transitioning from the street to the apron of the sidewalk, Plaintiff steps with her right foot onto yellow concrete. She takes two more steps (left then right) further up the sidewalk apron, which is slightly inclined, onto light grey concrete. Plaintiff falls during her fourth step on the sidewalk, where the concrete changes to a darker color. During that fourth step, her foot appears to catch momentarily and she begins

---

[1] *See* Target's Motion for Leave to File Exhibit in Digital Format filed contemporaneously herewith.

3

falling forward. The following four consecutive frames from the surveillance footage, starting at the 3:12:17 PM timestamp in the video, depict the moment Plaintiff tripped:



Frame 1    Frame 2

Frame 3    Frame 4

Due to the angle of the camera and relatively low resolution and frame rate of the video, the footage does not show what Plaintiff's left foot caught on, or even if her foot caught on anything. It is just as likely, based on Plaintiff's testimony and her statement to Mr. Davies immediately following the fall, that she simply misjudged the incline and slipped on a smooth section of cement. Even assuming Plaintiff's left foot caught on the sidewalk, the video does not show whether it caught on the surface of the light concrete, the surface of the dark concrete, or the seam between the light and dark concrete.

Plaintiff returned to the store with her sons, Michael and John McManus, Jr.,[2] to examine the sidewalk and identified the area where she tripped and fell. (Ex. 6 (M. McManus Dep., dated Oct. 25, 2018) at 20:21-22:7.); Ex. 7 (J. McManus Dep., dated Oct. 25, 2018) at 19:15-21, 23:6-11.)[3] Michael observed uneven concrete that appeared to be "several inches high,"[4] which was "very noticeable" from a standing position. (Ex. 6 (M. McManus Dep.) at 23:1-10, 24:14-21.) After the group left, John returned alone a few hours later to document and measure the area of sidewalk Plaintiff had identified. (Ex. 7 (J. McManus Dep.) at 27:4-28:2, 31:8-14, 32:13-18.) He measured an elevation change between concrete blocks of approximately one centimeter, (*id*. at 34:18-20.), which he documented with photographs, including the following image:



---

[2] For ease of reference, Target refers to Plaintiff's sons by their first names.

[3] John testified that this examination occurred "a week or two after she fell. I want to say the first weekend after." (Ex. 7 (J. McManus Dep.) at 13:17-14:4.) Michael testified that this examination occurred "a couple of weeks" after the incident. (Ex. 6 (M. McManus Dep.) at 20:21-21:3.)

[4] Michael's testimony about the height difference was the result of putting "a very close eyeball" on the sidewalk, rather than taking a measurement. (*Id*. at 24:1-12.)

5

(Ex. 8 (Photograph produced by J. McManus).)[5]  This elevation change was "somewhat observable from standing height."  (Ex. 7 (J. McManus Dep.) at 26:8-14).  Because he was not with Plaintiff when she fell, John admitted that the area he measured was merely an approximation of where she tripped.  (*Id.* at 41:16-42:2, 45:11-14.)

Plaintiff's civil engineer, Gregory Harrison, P.E., issued a report dated August 6, 2018.  In his report, Mr. Harrison states: "In the very specific area where Ms. McManus tripped and fell there were 9trip [*sic*] and fall hazards in the form of missing joint materials and or misaligned walkway surfaces ranging from 0.25 in. to as much as 0.75 in. in height."  (Ex. 9 (Harrison Report) at 5.)  As discussed below, this unsupported and vague assertion is insufficient to save this case from summary judgment.

## STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant must support the assertion that a material fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).  Rather, the opposing party must present specific facts from which the finder of fact reasonably could find for

---

[5] Plaintiff stipulated to the authenticity of all documents produced by John McManus, including this photograph.

that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "Mere speculation by the non-moving party cannot create a genuine issue of material fact." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001).

At the summary judgment stage, the Court should view facts "in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## ARGUMENT

### A.     There Is No Evidence Supporting Plaintiff's Causation Theory

To prevail on her negligence claim, Plaintiff must establish that Target's negligence caused her injuries. *Dehn v. Edgecombe,* 384 Md. 606, 619 (2005). "To support a claim for negligence at the summary judgment stage, a plaintiff must introduce specific factual evidence to support its theory of causation and not rely on mere speculation." *Frostbutter v. Bob Evans Farms, Inc.*, No. CIV.A. CBD-12-2388, 2013 WL 4026985, at *7 (D. Md. Aug. 6, 2013). Plaintiff alleges that the cause of her fall was "an uneven seam of concrete sidewalk," which she claims was negligently maintained by Target. (Ex. 1 (Pl.'s Compl.) ¶ 3.) Evidence supporting this theory, however, is entirely absent from the record.

Plaintiff testified that her memory of what caused her to fall "is not good," and openly admitted that she could not testify that that she tripped over an uneven portion of the sidewalk. (Ex. 2 (N. McManus Dep.) at 42:14-17, 45:21-46:18.) As such, Plaintiff's own testimony does not provide evidence of whether she tripped on an uneven concrete seam.

The video of the incident is equally unavailing. Notably, the space between the two cement sections in the area where Plaintiff alleges she tripped is less than two inches in width. (Ex. 8 (Photograph produced by J. McManus).) Due to the angle of the camera and quality of the video, the object that Plaintiff allegedly tripped over is not discernible in the surveillance footage. Based on the footage, no reasonable juror could conclude, without resort to rank speculation, that Plaintiff's toe caught on the raised edge of concrete on the far end of a two inch seam separating concrete sections, as Plaintiff contends. Plaintiff could have just as easily slipped, tripped over an even surface of concrete, tripped over her own feet, tripped over a small object on the sidewalk (*e.g.* a small rock, piece of gum, small piece of litter, etc.), or experienced sudden dizziness. Each scenario is equally plausible based on the video footage. Indeed, based on Plaintiff's statement to Mr. Davies, immediately following the fall, that she "just slipped," the most plausible scenario is that she did not trip on any portion of the sidewalk. Regardless, because the video evidence does not definitively show what, if anything, caused Plaintiff to trip, it is insufficient to defeat summary judgment. *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671–72 (D. Md. 1999), *aff'd*, 213 F.3d 632 (4th Cir. 2000) ("[T]o support causation in the face of a summary judgment challenge, evidence which amounts to a probability, not just a possibility, must be identified by the non-moving party, to guard against 'raw speculation' by the fact finder.")

Finally, Plaintiff's expert's report provides no evidence that any defect in the sidewalk caused her fall. Mr. Harrison merely states that he found multiple fall hazards in the "specific area" where Plaintiff fell. (Ex. 9 (Harrison Report) at 5.) He does not identify which, of the nine purported trip hazards he observed on the sidewalk, caused Plaintiff to fall. (*Id.*) That Mr. Harrison claims to identify nine hazards belies any assertion that he identified any particular one

8

that caused Plaintiff's fall. Ultimately, Mr. Harrison's report adds nothing to the factual record: he does not and cannot offer any evidence as to what, if anything, Plaintiff's foot caught that caused her to trip.

Accordingly, because Plaintiff has failed to produce any evidence to support her causation theory, Target is entitled to summary judgment.

**B. The Condition Of The Sidewalk Was Open And Obvious**

It is well-settled in Maryland that a storeowner is not the insurer of its customers' safety and owes no duty to warn against an open and obvious danger:

> Although the business invitor has a duty to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety. Like the owner, the invitee has a duty to exercise due care for his or her own safety. This includes the duty to look and see what is around the invitee. Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 389 (1997) (citations omitted). *See also Mondawmin Corp. v. Kres,* 258 Md. 307, 316 (1970) (noting that a landowner is subject to liability only if "he should expect that invitees will not discover the danger, or will fail to protect themselves against it").

This Court has repeatedly held that, unless obstructed from view, defects on sidewalks are open and obvious to pedestrians and, therefore, not the type of condition that subjects a property owner to liability. In *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351 (D. Md. 1998), the Honorable Robert S. Davis granted summary judgment in favor of a hotel against a plaintiff who claimed she was injured when she fell on an uneven curb/sidewalk joint in the hotel's parking lot. There, the alleged defect was a "small space between the horizontal plain of the curb and the adjoining sidewalk, seemingly less than an inch, coupled with ... a separation, in the form of an expansion joint, in the concrete curb." *Id.* at 353. Citing the principle that an

9

invitee is charged with open and obvious dangers, Judge Davis explained that an uneven spot on a sidewalk is the type of defect that is regularly encountered by pedestrians:

> Nevertheless, "[i]t is common knowledge that small cracks, holes and uneven spots often develop in pavement; and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a 'static' defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved." *Crenshaw v. Hogan*, 203 Ga. App. 104, 105, 416 S.E.2d 147 (1992); *see also Scott v. Sears, Roebuck and Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986) ("The pedestrian must be aware of the 'irregularities in grade, unevenness in surface [and] sharp depressions' frequently present in public walkways .... If the defect is open and obvious, an injured pedestrian may not recover unless he can prove that external conditions prevented his seeing the defect or would excuse his failure to see it .... Failure to observe would be excused only by a distraction that was unexpected and substantially beyond the miscellany of activity normally found on public sidewalks ....") (applying Virginia law; citations omitted).

*Id.* Judge Davis entered summary judgment against the plaintiff, concluding that the condition of the curb/sidewalk joint was open and obvious and that the layout provided "wholly unobstructed views in all directions from plaintiff's vantage point" of the claimed defect. *Id.* at 354.

In *Schaefer v. United States*, No. CV PX-15-02690, 2017 WL 2506174, at *3 (D. Md. June 9, 2017), the plaintiff sued the United States after she tripped on "something uneven" on the sidewalk at the Naval Air Station Patuxent River. *Id.* at *1. After she fell, the plaintiff "noticed that the concrete was cracked and misaligned," creating a lip with a depth as long as about one-and-a-half inches. *Id.* Citing to *Gellerman*, among other cases, the Honorable Paula Xinis recognized the principle that uneven ground surfaces generally do not rise to the level of defects that will impose liability on property owners:

> It is well settled that uneven ground surface generally does not amount to an "unreasonable risk," because pedestrians customarily and ordinarily expect to encounter such variations in terrain. [*Leatherwood Motor Coach Tours Corp. v. Nathan*, 84 Md. App. 370, 383 (1990)] (quoting *Pierce v. Baltimore*, 220 Md. 286 (1959)); *see also Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998) (holding that it is common knowledge that cracks and uneven spots often develop in pavement.); *see also Scott v. Sears, Roebuck and Co.*, 789

10

> F.2d 1052, 1054 (4th Cir. 1986) (Plaintiff cannot recover for injuries caused by open and obvious defects such as 'irregularities in grade, unevenness in surface [and] sharp depressions' frequently present in public walkways). It is simply an accepted fact of daily living that "pavements will in time become irregular and uneven from roots of trees, heavy rains and snows, or other causes." *Martin v. Mayor & Council of Rockville*, 258 Md. 177, 182 (1970) (city not liable for injuries sustained from depression in sidewalk that was 4 ½ inches wide, 7 inches long and no more than 1 ½ inches deep).

*Id.* at *3. Judge Xinis granted summary judgment in favor of the government, finding that the sidewalk crack "was readily apparent and obvious to a reasonable pedestrian including Plaintiff and did not present an unreasonable risk given the normal and customary variations in terrain." *Id.* at *4.

On substantially identical grounds, the Court entered summary judgment in favor of the defendant property owners in *Duncan-Bogley v. United States*, No. CV JKB-16-1137, 2018 WL 6435904 (D. Md. Dec. 7, 2018) (the plaintiff tripped over an uneven intersection of two concrete slabs with a height difference of approximately three quarters of an inch), *Sampson v. United States*, No. CV DKC 15-0243, 2017 WL 3022971 (D. Md. July 17, 2017) (the plaintiff tripped over a lip between sidewalk panels) and *Feldman v. NVR, Inc.*, No. GJH-14-0672, 2014 WL 6066022 (D. Md. Nov. 12, 2014) (the plaintiff tripped over an uneven curb on an island median).

The material facts here are virtually indistinguishable from the above-cited cases, and the same result is warranted. Plaintiff claims she tripped over an uneven surface in the sidewalk. Although the record conflicts as to the difference in height between concrete slabs where Plaintiff's foot allegedly caught, the surveillance video shows that the fall occurred on a sunny summer day, and that Plaintiff's view of the sidewalk was unobstructed. (Ex. 5 (Video of Incident, submitted in digital format).) Moreover, Plaintiff's sons' uncontroverted testimony is that the height difference was observable, and Michael testified that it was "very noticeable."

(Ex. 6 (M. McManus Dep.) at 24:14-21; Ex. 7 (J. McManus Dep.) at 26:8-14.)  On this record, Chief Judge Bredar's ruling in *Duncan-Bogley* is applicable:

> The Court concludes that, as a matter of law, a reasonable person in Plaintiff's position exercising ordinary perception and care would have recognized the condition and the risks of the uneven intersection between the concrete slabs.  The open and obvious doctrine imposes a duty on a plaintiff to exercise due care for her own safety.  In this instance, that duty required Plaintiff to account for visible defects in ground surface.  Because she failed to do so, all Defendants are entitled to judgment as a matter of law.

*Duncan-Bogley*, 2018 WL 6435904, at *8.  For the same reasons, Target is entitled to summary judgment here.

WHEREFORE, Target respectfully requests that the Court enter an order granting summary judgment in its favor in the above-captioned matter.

Respectfully submitted,

*/s/ Joshua F. Kahn*
Daniel R. Lanier (Bar No. 04504)
Joshua F. Kahn (Bar No. 11213)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD  21202
(410) 727-6464 (telephone)
(410) 385-3700 (facsimile)
dlanier@milesstockbridge.com
jkahn@milesstockbridge.com

*Attorneys for Defendant
Target Corporation*
